UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                  :

      - v. -                              :        S3 04 Cr. 962 (LAP)

DANIEL RENDON-HERRERA,                     :
    a/k/a "Don Mario,"
    a/k/a "El Viejo,"                    :
    a/k/a "El Tio,"
    a/k/a "La Senora,"                   :
FREDDY ENRIQUE RENDON-HERRERA,
    a/k/a "El Aleman,"                   :
    a/k/a "Aleman,"
    a/k/a "Berrio,"                      :
JHON JAIRO RENDON-HERRERA,
    a/k/a "Yesid,"                       :
    a/k/a "JJ,"
DIEGO RIVAS-ANGEL,                         :
    a/k/a "El Doctor,"
DAIRO ANTONIO USUGA-DAVID,                 :
    a/k/a "Mao,"
    a/k/a "Gallo,"                       :
    a/k/a "Mauricio-Gallo," and
JUAN DE DIOS USUGA-DAVID,                  :
    a/k/a "Giovanni,"
                                 :

                Defendants.

                              :

- - - - - - - - - - - - - - - - - -x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANT JHON JAIRO RENDON-HERRERA'S PRE-TRIAL MOTIONS

                            PREET BHARARA
                            United States Attorney for the
                            Southern District of New York
                            Attorney for the United States
                                of America.

BENJAMIN NAFTALIS
JOCELYN STRAUBER
Assistant United States Attorneys
    - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA              :

          - v. -                      :    S3 04 Cr. 962 (LAP)

DANIEL RENDON-HERRERA,                :
     a/k/a "Don Mario,"
     a/k/a "El Viejo,"                :
     a/k/a "El Tio,"
     a/k/a "La Senora,"               :
FREDDY ENRIQUE RENDON-HERRERA,
     a/k/a "El Aleman,"               :
     a/k/a "Aleman,"
     a/k/a "Berrio,"                  :
JHON JAIRO RENDON-HERRERA,
     a/k/a "Yesid,"                   :
     a/k/a "JJ,"
DIEGO RIVAS-ANGEL,                    :
     a/k/a "El Doctor,"
DAIRO ANTONIO USUGA-DAVID,            :
     a/k/a "Mao,"
     a/k/a "Gallo,"                   :
     a/k/a "Mauricio-Gallo," and
JUAN DE DIOS USUGA-DAVID,             :
     a/k/a "Giovanni,"
                                      :
                    Defendants.
                                      :

- - - - - - - - - - - - - - - - - -x


## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT JHON JAIRO RENDON-HERRERA'S PRE-TRIAL MOTIONS

          The Government respectfully submits this memorandum of

law in response to the pretrial motions of defendant Jhon Jairo

Rendon-Herrera, a/k/a "Yesid," a/k/a "JJ" ("Rendon" or the

"defendant"). In his motions, the defendant seeks (i) to dismiss

the Indictment because it fails to allege facts that support the charged conduct; (ii) a bill of particulars; (iii) various discovery requests; (iv) to unseal the underlying indictment; (v) pretrial release on bail; and (vi) a pretrial hearing under the Classified Information Procedures Act. For the following reasons, defendant's motions should be denied.

## I.  Background

As the Court is aware, the defendant, among others, is charged in Superseding Indictment S3 04 Cr. 962 (LAP), with conspiring, from in or about 1998 until in or about April 2009, to distribute cocaine with the knowledge or intent that the cocaine would be imported into the United States, in violation of Title 21, United States Code, Section 963. Additionally, the defendant's brother, Daniel Rendon-Herrera, is charged, in Count One, with conspiracy to combine, conspire, confederate and agree together and with each other to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), including the exchange of weapons for narcotics, to a foreign terrorist organization, to wit, the AUC,[1]

---

[1]    The *Autodefensas Unidas de Colombia* ("AUC") was founded in 1997 as an umbrella group uniting a number of paramilitary bands in Colombia. The AUC is a right-wing organization, whose main political objective is to defeat the left-wing *Fuerzas Armadas Revolucionarios de Colombia* ("FARC") in armed conflict, and remove FARC sympathizers from government and positions of influence in Colombia.

which was and remains designated by the United States Secretary of State as a foreign terrorist organization, contrary to Title 18, United States Code, Sections 2339B(a)(1), (d)(1) and 3238. Daniel Rendon-Herrera is also charged, in Count Three, with conspiracy to commit narco-terrorism, contrary to Title 21, United States Code, Section 960a.

The defendant is presently remanded in the Southern District of New York. Defendants Daniel Rendon-Herrera and Freddy Rendon-Herrera are both in custody in Colombia and their extradition to the United States has been sought.

## II. **The Superseding Indictment Should Not Be Dismissed**

Defendant moves to dismiss the instant indictment (S3 04 Cr. 962 (LAP), or the "S3 Indictment") because "the indictment on its face does not allege facts that support the allegations that Jairo Rendon participated in the conspiracy." (Def. at 6).[2] Defendant's motion is, effectively, a civil motion for summary judgment. Such relief is not available in the criminal context. Accordingly, the Court should deny the motion to dismiss.

### A. **Applicable Law**

"Federal criminal procedure does not provide for pretrial determination of the sufficiency of the evidence: there

---

[2]     "Def." refers to the Memorandum of Law filed in support of defendant's motion dated October 5, 2009. "Def. Mot." refers to the Motion dated October 5, 2009 filed by defendant, which appears to advance additional legal arguments.

is no federal mechanism resembling a motion for summary judgment in the civil context." *United States* v. *Parker*, 2009 WL 311871 at *2 (D. Vt. Feb. 6, 2009). Under Federal Rule of Criminal Procedure 7(c)(1), an indictment need only track the language of the statute charged and state the time and place of the alleged crime. *United States* v. *LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002) (internal citation omitted). An indictment is sufficient if it contains the elements and fairly informs the defendant of the offense charged and enables the defendant to plead double jeopardy in future prosecutions for the same offense. *United States* v. *Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (citing *Hamling* v. *United States*, 418 U.S. 87, 117 (1974)). In the context of a criminal motion to dismiss, the inquiry is simple: "the indictment must be tested by its sufficiency to charge an offense." *United States* v. *Sampson*, 371 U.S. 75, 79 (1962). On a pre-trial motion to dismiss an indictment, the Court should accept all factual allegations in the indictment as true. *See Boyce Motor Lines* v. *United States*, 342 U.S. 337, 343 n.16 (1952); *United States* v. *Clarke*, 05 Cr. 017 (DAB), 2006 WL 3615111 at *1 (S.D.N.Y. Dec. 7, 2006). Generally, a defendant may not argue outside of the four corners of the indictment. *See, e.g., Costello* v. *United States*, 350 U.S. 359, 363 (1956) (holding that an indictment, "if valid on its face, is enough to call for trial of the charges on the merits"); *United States* v.

*Eichman*, 756 F. Supp. 143, 145-46 (S.D.N.Y. 1991) (holding that, "[s]o long as the indictment sets forth the elements of the offense in sufficient detail to provide the defendant with notice of the charges against him and does not present double jeopardy problems, it is impervious to attack on a motion to dismiss").

There are narrow exceptions to the rule that a motion to dismiss an indictment must fail if the indictment, on its face, states the elements of the offense. One arises when an indictment may be dismissed pursuant to specific statutory authorization. *See, e.g.*, *United States* v. *Lopez*, 445 F.3d 90, 94 (2d Cir. 2006) (considering motion to dismiss an indictment for illegal reentry on the basis of a collateral attack on the underlying deportation order, which is specifically allowed by Title 8, United States Code, Section 1326(d)); *United States* v. *Adams*, 448 F.3d 492, 503 (2d Cir. 2006) (considering motion to dismiss an indictment pursuant to dismissal provision of the Speedy Trial Act, Title 18, United States Code, Section 3162(a)(2)). The other is when the defense is one "that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2) ("Rule 12").

The scope of these rules is clear: the Court should not, through a motion to dismiss, impinge on the fact-finding function of the jury. *See United States* v. *Caputo*, 288 F. Supp. 2d 912, 916 (N.D. Ill. 2003) ("A court can decide all questions

of law raised in a motion to dismiss and can make necessary preliminary findings of fact as long as the court does not invade the province of the jury. The jury is the fact-finder, so any arguments raised in a motion to dismiss that rely on disputed facts should be denied."). It can, however, address questions of law or questions of fact that do not implicate "the general issue." Rule 12. "The 'general issue' has been defined as evidence relevant to the question of guilt or innocence." *United States* v. *Dransfield*, 913 F. Supp. 702, 707 (E.D.N.Y. 1996) (citations omitted). For this reason, a district court, in ruling on a pre-trial motion to dismiss an indictment, may not "look[] beyond the face of [an] indictment and dr[a]w inferences as to the proof that [might] be introduced by the government at trial to satisfy ... [an] element [of the offense]." *United States* v. *Alfonso*, 143 F.3d at 777.

These rules are not unduly restrictive. The Court can entertain a wide variety of motions to dismiss prior to trial. Some may hinge upon purely legal questions, such as void-for-vagueness challenges (*see, e.g.*, *United States* v. *Roberts*, 363 F.3d 118 (2d Cir. 2004)) or the appropriate statute of limitations to apply. *See, e.g.*, *United States* v. *Gross*, 165 F. Supp. 2d 372, 376-77 (E.D.N.Y. 2001). Others may address mixed questions of law and fact that are not necessary to prove the case-in-chief, such as whether the tolling provision applies to

the statute of limitations (*see, e.g., United States* v. *Triumph*,
02 Cr. 81 (JBA), 2004 WL 1920352 at *4 (D. Conn. Aug. 24, 2004)
(unpublished)), whether a statute of limitations was improperly
tolled by an improper sealing of indictments (*see, e.g., United
States* v. *Gigante*, 436 F. Supp. 2d 647, 650 (S.D.N.Y. 2006)
(Chin, *J.*)), or double jeopardy issues. *See, e.g., United States*
v. *Olmeda*, 461 F.3d 271, 278 (2d Cir. 2006) (discussing
collateral review of motions to dismiss indictments based upon
double jeopardy grounds).

It is black-letter law, however, that sufficiency-of-
the-evidence arguments are not properly addressed in pre-trial
motions to dismiss the indictment. In *Alfonso*, the district
court had dismissed an indictment based on a Hobbs Act robbery
where it concluded that "[t]he Government has not adduced
sufficient facts to establish a nexus between the robbery
allegedly committed by Alfonso and Gomez and any obstruction of
interstate commerce," and, therefore, the Government failed to
establish jurisdiction. *Id.* at 774. The Second Circuit
reinstated the indictment, holding that, unless the Government
had made a full proffer of the evidence it intended to adduce at
trial, "the sufficiency of the evidence is not appropriately
addressed on a pretrial motion to dismiss an indictment." *See
also, United States* v. *Cirino*, 06 Cr. 261 (PCD), 2006 WL 3422191
at *3 (D. Conn. Nov. 27, 2006) (citing *Costello*, 350 U.S. at

363); *United States* v. *McDougal*, 25 F. Supp. 2d 85, 96 (N.D.N.Y. 1998) ("Because Porter's arguments deal more directly with issues of proof and sufficiency of evidence that are best left for the jury, the Court denies Porter's motion to dismiss the indictment ..."). A defendant may not perform an end-run around the rules governing the limited applicability of pretrial motions to dismiss by styling his motions as pretrial Rule 29 motions. *See, e.g.*, *United States* v. *Labate*, 00 Cr. 632 (WHP), 2001 WL 533714 at *3 (S.D.N.Y. 2001) (unpublished) ("defendants straddle the line between a proper pretrial motion in which a defendant in narrow circumstances may challenge the sufficiency of an indictment and an improper argument that resembles a pretrial Rule 29 motion for judgment of acquittal based on the sufficiency of the evidence that defendants anticipate will be presented by the Government in its case-in-chief").

**B.   Analysis**

Rendon has not alleged that the S3 Indictment, on its face, does not charge an offense; nor has Rendon raised any legal issues that can be determined without a trial of the "general issue." That ends the inquiry, and the defendant's motion to dismiss should be denied.

**III. No Pretrial Hearing is Required To Determine Whether The Defendant Withdrew From the Conspiracy**

Rendon also argues that, because "he had withdrawn from the alleged conspiracy more than five years before the indictment

against him was returned," a pretrial hearing is required. (Def. at 5). Defendant advances a possible trial defense and, therefore, his request for a pretrial hearing should be denied.

## A. Applicable Law

The statute of limitations applicable to the prosecution at bar provides as follows:

> [N]o person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.
>
> 18 U.S.C. § 3282. For the purpose of tolling the statute of limitations, an indictment is "found" when it is returned by the grand jury and filed. *United States* v. *Villa*, 470 F.Supp. 315 (N.D.N.Y.1979); *see United States* v. *Cerilli*, 428 F.Supp. 801, 808 (W.D.Pa.), *aff'd*, 558 F.2d 697 (3d Cir.), *cert. denied*, 434 U.S. 966, 98 S.Ct. 507, 54 L.Ed.2d 452 (1977); Fed. R. Crim. P. 6(f). Accordingly, when a sealed indictment is not opened until after the expiration of the time allowed by the statute of limitations for the prosecution of an offense, the statute ordinarily is not a bar to prosecution if the indictment was timely filed. *United States* v. *Muse*, 633 F.2d 1041 (2d Cir. 1980) (*in banc*), *cert. denied*, 450 U.S. 984, 101 S.Ct. 1522, 67 L.Ed.2d 820 (1981). However, when the defendant can demonstrate substantial actual prejudice occurring between the date of sealing and the date of unsealing, the expiration of the limitations period before the latter event warrants dismissal of the indictment. *Id.* at 1042. In such a case the indictment is not considered "found" until it is unsealed.

*United States* v. *Srulowitz*, 819 F.2d 37, 40 (2d Cir. 1987). *See also United States* v. *Schlesinger*, 261 Fed. Appx. 355, 358-59 (2d

Cir. 2008) ("The prejudice cited here is that an alleged co-conspirator who died while the indictment was under seal 'may have proven helpful at trial.' We need not decide whether this event would be consequential if its effect were not speculative."); *United States* v. *Watson*, 599 F.2d 1149, 1154 (2d Cir. 1979) ("[W]hen a sealed indictment has tolled the statute of limitations, the policy of repose underlying the statute demands that the Government unseal the indictment as soon as its legitimate need for delay has been satisfied.").

It is well-settled that the statute of limitations is "the primary guarantee against bringing overly stale criminal charges." *United States* v. *Marion*, 404 U.S. 307, 322 (1971) (citations and quotations omitted). Thus, when a case has been brought within the statute of limitations, it is "only rarely dismissed," and carries a "strong presumption of validity." *United States* v. *Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999). An indictment brought within the statute of limitations violates due process only where the defendant meets his "heavy burden" of showing that: (i) "he suffered actual prejudice because of the alleged pre-indictment delay," and (ii) "that such delay was a course intentionally pursued by the government for an improper purpose." *Id.* (citations omitted).

"Prejudice in this context has meant that sort of deprivation that impairs a defendant's right to a fair trial."

Id. at 752. Further, "the proof of prejudice must be definite and not speculative." *United States* v. *Birney*, 686 F.2d 102, 105-06 (2d Cir. 1982). To meet the improper purpose prong of the test, the delay must be "so unfair as to violate fundamental concepts of fair play and decency, such as would occur if the prosecutor deliberately used the delay to achieve a substantial tactical advantage." *United States* v. *Rubin*, 609 F.2d 51, 66 (2d Cir. 1979), *aff'd*, 449 U.S. 424 (1981). As a general matter, a prosecutor is "justified in not seeking the indictment until . . . convinced that there [will] be sufficient evidence to prove guilt beyond a reasonable doubt." *United States* v. *Rubin*, 609 F.2d at 66. Indeed, in *United States* v. *Lovasco*, 431 U.S. 783 (1977), the Supreme Court refused to adopt a rule that "once the Government has assembled sufficient evidence to prove guilt beyond a reasonable doubt, it should be constitutionally required to file charges promptly, even if its investigation of the entire criminal transaction is not complete." *Id.* at 792. Such a rule, the Court reasoned, would among other things disadvantage the defendant by pressuring prosecutors into "resolving doubtful cases in favor of early and possibly unwarranted prosecution." *Id.* at 793. The Court noted that "[t]he determination of when the evidence available to the prosecution is sufficient to obtain a conviction is seldom clear-cut, and reasonable persons often will reach conflicting conclusions." *Id.* Thus, the Court held that an

"investigative delay" does not deprive a defendant of due process, "even if his defense might have been somewhat prejudiced by the lapse of time." *Id.* at 796.

Further, the Second Circuit has held that withdrawal from a conspiracy is *not* a defense where the defendant participated in the charged conspiracy prior to the date of withdrawal. *United States v. LoRusso*, 695 F.2d 45, 55 n.5 (2d Cir. 1982); *see also United States v. Rogers*, 102 F.3d 641, 644 (1st Cir. 1996) (withdrawal from a conspiracy is not an affirmative defense if the conspiratorial agreement has already been made). Moreover, while a defendant's affirmative withdrawal from a conspiracy may bar prosecution if the statute of limitations has run by the time the indictment is filed in the case, this is a question for a jury to decide at trial. *See United States v. Flaharty*, 295 F.3d 182, 192-93 (2d Cir. 2002); *United States v. James,* 609 F.2d 36, 41-42 (2d Cir. 1979).

**B. Discussion**

Here, the underlying Indictment, 04 Cr. 962, was returned on or about September 8, 2004, and was brought well within the statute of limitations. Rendon has completely failed to address, or meet his burden of demonstrating, either an improper purpose for, or actual prejudice from, the delay. And Rendon does not dispute that he was a member of the narco-trafficking conspiracy set forth in the indictment *prior* to his

alleged withdrawal. (*See LoRusso*, 695 F.2d at 55 n.5; Def. at 2). Lastly, Rendon's contention that he withdrew prior the statute of limitations -- and somehow is entitled to a pretrial hearing on the issue -- is without legal basis and is a classic question for a jury to decide at trial. *See Flaharty*, 295 F.3d at 192-93; *James,* 609 F.2d at 41-42. (Indeed, a jury instruction pertaining to a defendant's withdrawal from the charged conspiracy is ofttimes given, when appropriate.) Accordingly, defendant's motion for a pretrial hearing on his withdrawal from the charged conspiracy should be denied.

## IV. The Discovery Requests Should Be Denied

Defendant also asks this Court to act upon his prior discovery letter-request to the Government. (Def. Mot. ¶¶ 2-3). The Government understands and embraces its Rule 16 obligations, and has complied with them. As the Government becomes aware of the existence of additional materials, the Government will promptly comply with its continuing discovery obligations. *See* Rule 16(c), Fed. R. Crim. P. Because the Government has fully complied with its Rule 16 obligations, these discovery requests should be denied.

## V. The Request For A Bill Of Particulars Should Be Denied

Defendant also contends that a bill of particulars is required because "the indictment is so broad and non specific that the defendant is unable to mount a defense to the charges."

(Def. at 4). Specifically, defendant states that he requires more information about "where and when" meetings with his coconspirators took place in order to mount his defense. (*Id.*). Defendant's motion is baseless.

## A.    The Applicable Law

The sole legitimate purpose of a bill of particulars is to furnish those facts that are necessary (i) to apprise the defendant of the charges against his with sufficient precision to enable him to prepare his defense; (ii) to avoid unfair surprise at trial; and (iii) to preclude a second prosecution for the same offense. *See, e.g., Wong Tai* v. *United States*, 273 U.S. 77, 80-82 (1927). Therefore, a bill of particulars is only required "'where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1990); *see also United States* v. *Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977). The ultimate test for whether a bill of particulars should be granted is not whether the information sought is merely helpful in preparing for trial, but whether it is necessary for the limited notification purposes of a bill of particulars. *See United States* v. *Ramirez*, 602 F. Supp. 783, 793 (S.D.N.Y. 1985); *United States* v. *Leighton*, 265 F. Supp. 27, 35 (S.D.N.Y. 1968).

For this reason, a bill of particulars generally is not

required where the information sought by the defense is readily accessible in some acceptable, alternative form. *United States* v. *Bortnovksy*, 820 F.2d 572, 574 (2d Cir. 1987); *see also United States* v. *Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984) (no bill of particulars required where indictment spelled out defendants' conduct in scheme, prosecutor met with defense counsel and explained government's contentions, and provided defense with copies of all relevant documents); *United States* v. *Ruiz*, 702 F. Supp. 1066, 1070-71 (S.D.N.Y. 1989) (denying bill of particulars where indictment is specific, defendant had adequate discovery and time to prepare, and there had been meetings between defense counsel and counsel for the government).

Furthermore, a bill of particulars is not to be used to learn: evidentiary detail, *Torres*, 901 F.2d at 234; the precise manner in which the charged crimes were committed, *United States* v. *Andrews*, 381 F.2d 377, 378 (2d Cir. 1967); or the manner in which the Government will prove the charges, *Leonelli*, 428 F. Supp. at 882.

The limited use of a bill of particulars is informed by two fundamental principles. First, the Government is not required to provide information tantamount to an itemized preview of its proof because of the very real danger in criminal cases that the defendant will tailor her testimony to explain away the Government's pre-disclosed case. *United States* v. *Cimino*, 31

F.R.D. 277, 279 (S.D.N.Y. 1962). Second, detailed inquiries into the Government's case repeatedly have been rejected because they would unduly restrict the Government in presenting its proof at trial. *See, e.g., United States* v. *Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993); *United States* v. *Heredia*, No. 02 Cr. 1246 (SWK), 2003 WL 21524008, at *9 (S.D.N.Y. July 3, 2003).

## B.  Discussion

Defendant's motion is a thinly veiled request for non-discoverable information related to the Government's case, and it should be denied. At the threshold, the charges against him are straightforward and simple: he and five other defendants are charged with participating in a conspiracy to import cocaine from Colombia into the United States from 1998 until April 2009. This is not a complex case requiring the defense to sift through thousands of pages of discovery in order to figure out what events will be the subject of the trial. Moreover, the S3 Indictment is approximately eighteen pages long and provides ample detail relating to the defendants, including Rendon, conduct and conspiracy. Further, the overt acts in the Indictment outline some of the conduct which Rendon was involved in and also provide the approximate dates of those acts. For this reason alone, the request should be denied. *See Feola*, 651 F. Supp. at 1132; *see also*, *United States* v. *Walsh*, 194 F.3d at 47 ("[A] bill of particulars is not necessary where the

government has made sufficient disclosures concerning its evidence and witnesses by other means."); *United States* v. *Giffen*, S1 03 Cr. 404 (WHP), 2004 WL 1475499, at *7 (S.D.N.Y. July 2, 2004) ("A district court should deny a bill of particulars 'if the information sought by a defendant is provided in the indictment or in some acceptable alternative form.'" (citation omitted). *See also Chen*, 2004 WL 1746611, *9.

Rendon's requests also do not constitute necessary information for an effective defense. *See Feola*, 651 F. Supp. at 1132; *see also United States* v. *Carroll*, 510 F.2d 507, 509 (2d Cir. 1975). Rather, they are an attempt to learn the Government's theory of the case, who the witnesses are that the Government will call, and to force the Government to provide a preview of the evidence it intends to present.

Accordingly, because Rendon has a clear indication of the charges against him, and because any request for additional material would serve only to provide a preview of the Government's case, the defendant's request should be denied.

## VI.   The Underlying Indictment Should Not Be Unsealed

Defendant asserts (upon information and belief) that, in 2004, the Government obtained an indictment in 2004 that does not name him as a defendant, for no reason other than the fact that the it "remains under seal." (Def. Mot. ¶ 5). The underlying indictment, 04 Cr. 962, was filed on or about

September 8, 2004, and remains sealed; the first superseding indictment was filed on or about April 14, 2009 and is unsealed; the second superseding indictment was filed on or about April 21, 2009 and is unsealed; and third superseding (or the S3 Indictment) was filed on or about June 16, 2009 and is unsealed. Based only on speculation and conjecture, Rendon now demands that the underlying sealed indictment be unsealed and disclosed, and that it (somehow) constitutes *Brady* material. (*Id.*). The Court should deny defendant's request.

The Second Circuit has held that "there are various legitimate prosecutorial objectives, including, but not limited to, the facilitation of arrest, that will justify the sealing of an indictment." *United States* v. *Srulowitz*, 819 F.2d 37, 40 (2d Cir. 1987). Courts have found that protecting ongoing investigations and assisting in the capturing of fugitives are additional legitimate prosecutorial objectives. *United States* v. *Lyles*, 593 F.2d 182 (2d Cir. 1979) (holding that the defendant, who was incarcerated, was not prejudiced by a 13 month delay in unsealing the indictment, during which the government attempted to locate four indicted parties); *United States* v. *Bracy*, 67 F.3d 1421, 1426 (9th Cir. 1995) (finding the ongoing nature of an investigation to be a legitimate prosecutorial objective in sealing the indictment). Further, the Second Circuit has held that "great deference should be accorded to the discretion of the

magistrate, at least in the absence of any evidence of substantial prejudice to the defendant." *United States* v. *Southland Corp.*, 760 F.2d 1366, 1380 (2d Cir. 1985).

Here, the defendant was named in the underlying and subsequent superseding indictments; the underlying indictment contain no exculpatory information; and the defendant suffers no prejudice, let alone substantial prejudice, with the underlying indictment remaining sealed. Accordingly, defendant's unsealing request should be denied.

## VII. The Defendant's Requests For Bail Are Unavailing

Defendant argues for pretrial release, principally because he is not a risk of flight and is not a danger to the community. Rather than basing his motion on relevant or controlling statutory and legal authority, defendant, instead, produces a series of affidavits by Colombian defense attorneys, a collection of newspaper articles, an opinion from the 11th Circuit Court of Appeals, and a conclusory affidavit by the defendant that purport to substantiate his position. (Def. at 7-8; Def. Mot. ¶ 16-18 and Exhs. B-J). As a threshold matter, defendant's bail motion is academic: even were this Court to grant the defendant bail, this Court's order would have no effect, because the defendant would immediately be transferred to ICE custody, pursuant to his immigration detainer. Regardless, on the merits, given the scope and seriousness of the defendant's

charged conduct, the defendant should be denied bail.[3]

### A. Defendant Has No Legal Immigration Status in the Untied States

Rendon has no legal immigration status in the United States. He is a Colombian citizen who was paroled into the United States by the Government for the sole purpose of criminal prosecution, pursuant to a Significant Public Benefit Parole ("SPBP") Visa. (*See* U.S. CBP Detainer for Jairo De Jesus Rendon Herrera, A097 534 299, dated July 31, 2009, attached hereto (hereinafter, "Rendon SPBP Visa")). ICE may revoke Rendon's SPBP Visa at anytime. Further, his SPBP Visa will expire on October 31, 2009, after which the defendant will be classified as an overstay or possibly inadmissible at time of entry.

In any event, the defendant is ineligible for a visa or admission to the United States for a number of independent reasons. For example, Rendon is an alien who is or has been an illicit narcotics trafficker (8 U.S.C. § 1182(a)(2)(C)); and he is an alien who is a member of and associated with a terrorist organization, to wit, the AUC (8 U.S.C. § 1182(a)(3)(B)(i)(IV), (V), (VI), & (VII)). Consequently, under Title 8 of the United

---

[3] Rather than argue the reasons for the defendant's continued remand in this criminal matter on the papers, the Government respectfully requests the opportunity to address this issue orally at the next conference. What follows is a discussion pertaining to this Court's jurisdiction to order ICE to release the defendant on bail.

States Code, the defendant is ineligible for a visa and, therefore, cannot lawfully enter or remain in the United States.

Given the defendant's lack of legal status in the Untied States, the Department of Homeland Security, United States Customs and Border Protection, has lodged an immigration detainer, which commands the United States Marshal's Service ("USMS") that an "[i]nvestigation has been initiated to determine whether [the defendant] is subject to removal/deportation from the United States." (*See* Rendon SPBP Visa at 1). The practical effect of the detainer is, were the defendant granted bail in his criminal case, the USMS would be mandated to transfer the defendant to ICE's Detention and Removal division for removal/deportation proceedings.[4]

## B. Any Bail Determination By This Court Is Academic Because Of The Defendant's ICE Immigration Detainer

As a threshold matter, defendant's bail motion is academic: as explained above, even were this Court to grant him bail, this Court's order would have no practical effect, because the defendant would immediately be transferred to ICE custody,

---

[4]     Of course, if the defendant were granted bail in his criminal case and transferred to ICE custody, there is no guarantee that ICE would assign the defendant to an ICE facility in the vicinity of the Southern District of New York. Indeed, the defendant would, in all likelihood, be transferred to an ICE facility far from the Southern District and out of the reach of this Court, thereby increasing the potential for the defendant's non-appearance in his criminal case and, certainly, affecting his access to defense counsel.

pursuant to the defendant's immigration detainer, and ICE's Detention and Removal division would begin administrative removal/deportation proceedings. (*See supra*). And any determination about a defendant's immigration status and custody rests on a bedrock principle of law: immigration matters are civil in nature, not criminal.

"A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country is itself a crime." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (post-order detention proceedings "are civil, not criminal . . . they are non-punitive in purpose and effect"); *also see Guaylupo-Moya v. Gonzales*, 423 F.3d 121, 132 (2d Cir. 2005) ("deportation proceedings have consistently been characterized as civil in nature"); *Rajah v. Mukasey*, 544 F.3d 427, 442 (2d Cir. 2008) ("Immigration law is generally regulatory rather than criminal"). Thus, any determination about the defendant's immigration status and the conditions upon which he may remain in the United States can only be made in a civil proceeding under the applicable immigration statutes and regulations.

Rendon's application for bail in this criminal proceeding and demand that this Court order ICE to release the defendant runs afoul of this critical distinction, because Rendon

is -- at base -- asking this Court for civil relief in a criminal proceeding. Just as there are rules in criminal proceedings that do not apply in civil proceedings, civil administrative law has established principles that are not compatible with a district judge's authority in a criminal case. Put another way, this Court lacks jurisdiction to order ICE what to do in its civil, administrative proceeding.

Assuming *arguendo* that this Court would have any role in reviewing Rendon's immigration custody status, upon his transfer to ICE custody and ICE's subsequent removal proceedings, its authority to order ICE to undertake any particular action would be governed by 28 U.S.C. § 2241. *See Zadvydas*, 533 U.S. at 687-88 ("the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear" cases challenging ICE's authority under the post-removal order "detention statute"). Although the REAL ID Act, Pub. L. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) ("REAL ID Act"), repealed district courts' jurisdiction under section 2241 to review removal orders, district courts retain jurisdiction to review pure detention challenges. *See Sandher v. Gonzales*, 481 F.3d 108, 110 (2d Cir. 2007) (the REAL ID Act divested district courts of "habeas jurisdiction to review final administrative orders of removal"); *Sikivou v. DHS*, 06 Civ. 5530 (PKC), 2007 WL 2141564, at *2 (S.D.N.Y. Jul. 25, 2007) ("The REAL ID Act does not divest

district courts of jurisdiction to hear an alien petitioner's habeas corpus petition challenging conditions of current confinement"); Conference Report on H.R. 1268, 151 Cong. Rec. H2813-01, H2873, 2005 WL 1025891 (May 3, 2005) ("Finally, it should also be noted that section 106 will not preclude habeas review over challenges to detention that are independent of challenges to removal orders.").

To the extent Rendon's future claims were to be reviewed under section 2241 upon the completion of the administrative removal process, the express terms of the statute would limit the court's review to violations of "the Constitution or laws" of the United States. *See Sol v. INS*, 274 F.3d 648, 651 (2d Cir. 2000) (2241 proceedings do not extend to "agency's factual findings or the Attorney General's exercise of her discretion . . . habeas statute plainly provides: review for statutory or constitutional errors"). Because Rendon has failed to exhaust (let alone begin) administrative remedies, and has alleged no statutory or constitutional errors, it is not apparent that there would be a basis for future district court jurisdiction over Rendon's immigration custody. Further, to the extent Rendon were to disagree with ICE's administrative findings of fact or its exercise of discretion, such disagreements do not fall within the scope of federal court review.

Under these circumstances, the importance of exhaustion

of administrative remedies is especially apparent. Until Rendon is actually detained by ICE, ICE articulates the provisions of law governing his detention; and until Rendon has sought to remedy any alleged claims of legal error in his ICE (civil) detention, a district court lacks jurisdiction to review such challenges. *See Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (failure to exhaust administrative remedies bars judicial review of unexhausted claims in habeas proceedings). Thus, a district court has no jurisdiction over immigration detention status until his claims have been raised with ICE, and ICE has made a determination about Rendon's contentions under applicable facts and law. Then, and only then, would habeas jurisdiction over a narrow scope of issues be triggered.

To the extent Rendon may seek a writ to expedite the administrative process, the Court should decline to issue such a writ because it lacks a civil jurisdictional foundation to do so. *See Zadvydas*, 533 U.S. at 687-88 ("the primary federal habeas corpus state, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear cases challenging ICE's authority under post-removal order "detention statute"); *supra*, (administrative remedies have not been exhausted and no showing of violation of laws or Constitution as required by section 2241).

Defendant's reliance on a single unreported decision from the District of Minnesota is of no weight. Contrary to

defendant's claim, the case of *United States* v. *Barrera-Omana*, 2009 WL 2219080 (D. Minn. July 23, 2009), does not stand for the proposition that "[t]his court has the authority to release a defendant notwithstanding whether the Department of Homeland Security (DHS) has custody of the defendant, or the Immigration and Natural Service (INS) has issued him a visa." (Def. Mot. ¶ 17). In *Barrera-Omana*, a magistrate judge ordered an undocumented immigrant defendant charged with possession with intent to distribute one kilogram of cocaine detained, because ICE had issued a detainer and because the indictment charged a narcotics felony. *Id.* at, *1. A different magistrate granted the defendant's subsequent motion for reconsideration and ordered him released. *Id.* On reconsideration to the district judge, that court determined that consideration of the existence of an ICE detainer is not among the factors relevant to pretrial detention, under 18 U.S.C. § 3142(g). *Barrera-Omana* goes no further and, certainly, does not speak to whether an Article III judge presiding over a criminal case can order ICE to release a defendant held on an administrative immigration detainer.[5]

---

[5]     Without wandering into the parties' Rule 11 discussions, the Government notes that the defendant's statement that he voluntarily surrendered to the United States because "he expected a speedy trial" is inaccurate. (Def. Mot. ¶ 15; *see also* Def. 7). The Government paroled the defendant into the United States via a special parole benefit visa because the defendant represented his desire to cooperate with the Government and to avoid undesirable pre-extradition incarceration

Defendant's other contention that *United States v. Valencia Trujillo*, No. 07-10524 (11th Cir. July 7, 2009), "casts doubt that the Colombian Supreme Court would approve extraditions to the United States of Colombian citizens under current bilateral agreements (not treaties)" is nothing more spurious conjecture. (Def. Mot. ¶ 9). The United States has an extradition treaty with Colombia that is valid and operable. The Colombian Supreme Court has approved, and routinely continues to approve, the extradition of Colombian citizens to the United States of America for criminal prosecution. For example, in the past month, in *United States v. Fierro*, 08 Cr. 1003 (SHS), two defendants were extradited to the United States and are presently in custody in the Southern District of New York on narcotics charges. And on October 14, 2009, the Colombian Supreme Court approved the extradition of David Murcia-Guzman (who was indicted in or about February 2009 in *United States v. David Murcia-Guzman, et al.*, 09 Cr. 110 (WHP)) to the Southern District of New York on money laundering charges. (*See,* e.g.,http://www.semana.com/noticias-justicia/david-murcia-guzman-paso-extraditado/130011.aspx (last accessed October 14, 2009)). Accordingly, defendant's commentary on the state of the United States' extradition process with Colombia is inaccurate.

---

in a Colombian prison, along with his brothers.

## VIII.    The Court Should Deny Defendant's CIPA Request

Defendant also requests a hearing to determine what potentially classified information may be disclosed to the defense and in what form.  (Def. Mot. ¶¶ 22-24).  As indicated at the September 21, 2009 pretrial conference, the Government believes that there may be relevant classified information, but is not presently in a position to speak to this issue.  The Government anticipates beginning its review of classified materials shortly, and will keep both the defendant and the Court apprised of its progress.  Accordingly, any conference or hearing under the Classified Information Procedures Act ("CIPA") would be premature and, therefore, the Court should deny defendant's present CIPA request.

## IX. Conclusion

For the foregoing reasons, the motions should be denied.

Dated:     New York, New York
              October 20, 2009

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By: _____

Benjamin Naftalis
Jocelyn Strauber
Assistant United States Attorneys
Tel: (212) 637-2456/ -1034
Fax: (212) 637-0086

CERTIFICATE OF SERVICE

BENJAMIN NAFTALIS deposes and says that he is employed in the Office of the United States Attorney for the Southern District of New York.

That on October 20, 2009, he served a copy of the foregoing Government's Memorandum of Law in Opposition to Defendant's Pretrial Motions by Electronic Filing on:

Omar Lopera
Koehler & Isaacs LLP
120 Broadway, 29th Floor
New York, New York 10271
Tel: 917-551-1300
Fax: 917-551-0030

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. Section 1746.

_Benn_

BENJAMIN NAFTALIS

Executed on: October 20, 2009
New York, New York